**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **STARR BARRETT,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**WASHINGTON MUTUAL BANK, FA; FANNIE MAE, FANNIE MAE AS TRUSTEEE FOR SECURITIZED TRUST FANNIE MAE GUARANTEED REMIC PASS-THROUGH CERTIFICATES REMIC 2003-128 TRUST, WELLS FARGO HOME MORTGAGE, AND DOES 1 THROUGH 100 INCLUSIVE,** *et al.,*<br><br>      **Defendants** | Civ. No. 17-cv-7942 (KM)<br><br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

I. **Introduction**

This action arises from a state court mortgage foreclosure action which went to final judgment on July 31, 2017. Starr Barrett, as mortgagor/borrower, brings this action against Washington Mutual Bank, FA ("WaMu"), whose successor is JPMorgan Chase Bank, N.A. ("Chase"); Fannie Mae; Fannie Mae as Trustee for Securitized Trust Fannie Mae Guaranteed REMIC Pass-Through Certificates REMIC 2003-128 Trust; and Wells Fargo Home Mortgage. Defendants move under Fed. R. Civ. P. 12(b)(1) to dismiss the complaint on jurisdictional grounds, and under Rule 12(b)(6) to dismiss it for failure to state a claim. (ECF nos. 19, 20) For the reasons stated below, the motion will be granted and the complaint will be dismissed without prejudice.

1

## INTRODUCTION

### A. The Mortgage and State Foreclosure Action

On November 10, 2003, Washington Mutual Bank, FA ("WaMu") made a residential loan to the plaintiff, Ms. Barrett. The note is secured by a mortgage on the property, 1472A Liberty Avenue, Hillside, New Jersey. On September 25, 2008, JPMorgan Chase Bank, N.A. ("Chase") purchased certain assets of WaMu from the Federal Deposit Insurance Corporation ("FDIC") as receiver. The mortgage was assigned to Chase. (Declaration of Richard P. Haber ("Haber Decl."), ECF no. 20-2, ¶3) Barrett entered into a loan modification agreement with Chase on November 5, 2011. (*Id.* ¶ 4) Although the complaint alleges that the loan was sold to Fannie Mae and securitized, Morgan remains the mortgagee of record. (*Id.* ¶ 3) Barrett defaulted under the note and mortgage by failing to make the payment due on September 1, 2016. (*Id.* ¶¶ 5, 7)

On February 22, 2017, Chase filed a complaint in foreclosure in the Superior Court of New Jersey, Chancery Division, Union County. (Docket No. F-4449-17) (Haber Decl. ¶5 & Ex. D) The Superior Court entered a final judgment of foreclosure on July 31, 2017. (*Id.* ¶ 6 & Ex. E)

### B. This Action

On October 6, 2017, Barrett filed this action in federal court. The Complaint ("Cplt.", ECF no. 1) asserts nine causes of action:

1. Lack of standing to foreclose and wrongful foreclosure
2. Fraud in the concealment
3. Fraud in the inducement
4. Unconscionable contract
5. Breach of contract
6. Breach of fiduciary duty
7. Quiet title
8. Injunctive relief as to sheriff's sale

9. Declaratory relief as to sheriff's sale

A separate motion to dismiss was filed on behalf of defendant Wells Fargo. (ECF no. 19) A motion to dismiss was also filed on behalf of all remaining defendants (including Chase as successor to WaMu). (ECF no. 20) ("Defendants," as used herein, will refer to those remaining defendants.)

## C. Standard on a motion to dismiss

Defendants have moved to dismiss the Complaint for lack of jurisdiction, citing the *Rooker-Feldman* doctrine (*see infra*). Rule 12(b)(1) governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.,* 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa,* 67 F. Supp. 2d at 438.

Defendants and Wells Fargo have also moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

3

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In connection with the motions, defendants have attached records of the state court foreclosure proceeding. These are cited, not for the facts contained therein, but only in order to establish the nature and scope of prior proceedings between the parties, and the rulings of the state court. Such records are subject to judicial notice:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Defendants have also attached the underlying mortgage documents. Such documents, as well as the records of the foreclosure action, may be considered without converting a facial Rule 12(b)(1) challenge into a factual

one, or a Rule 12(b)(6) motion into one for summary judgment. *See Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

Where a complaint is based on particular documents, a defendant may submit and rely on such documents in its motion to dismiss. The reasons for the rule are (1) that the plaintiff, having relied on the document, cannot claim unfair surprise; and (2) the plaintiff cannot base a claim on a document while shielding the document itself from view:

> What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*Burlington,* 114 F.3d at 1426 (on 12(b)(6) motion to dismiss securities fraud complaint alleging misstatements in annual report, court may examine the report itself).

The very substance of this complaint is based on the mortgage and note and the alleged illegality of the state foreclosure proceedings. The mortgage and note, and the publicly filed pleadings and rulings of the court in those foreclosure proceedings may therefore be considered.

Where the plaintiff is proceeding *pro se,* the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not

5

absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

## ANALYSIS

### A. Rule 12(b)(1) motion

### 1.    Defendant Wells Fargo

Wells Fargo Home Mortgage is named in the caption of the Complaint. The body of the complaint contains no factual allegations against Wells Fargo, which is not so much as mentioned. In its brief, Wells Fargo states that it had nothing to do with this loan. That statement is confirmed by a review of the loan documents and the rulings in the state foreclosure proceedings.

Barrett's Response (ECF no. 25) offers nothing but a statement that Wells Fargo "is included in the suit because they may be a qualified securitized trust and must be searched for discovery of actual loan level detail." Even assuming that I may consider these statements in a brief,[1] a bare statement that something might turn up in discovery is not sufficient to state a claim.

Where there are no factual allegations against a defendant, it is possible to quibble over whether dismissal would be more appropriate for lack of jurisdiction or for failure to state a claim. Either way, the complaint is dismissed as against Wells Fargo.

### 2.    *Rooker-Feldman*

Defendants move, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss the complaint for lack of jurisdiction under the *Rooker-Feldman* doctrine.

A federal district court does not sit to hear appeals from state court judgments. Thus *Rooker-Feldman* holds that lower federal courts cannot entertain federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a prior state court decision. *See District of*

---

[1]     "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal citations and quotations omitted). I nevertheless consider those statements in light of Barrett's *pro se* status.

Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); Guarino v. Larsen, 11 F.3d 1151, 1156–57 (3d Cir. 1993); Port Auth. Police Benev. Ass'n v. Port Auth., 973 F.2d 169, 178 (3d Cir. 1992). The first alternative, actual adjudication, requires little explication. As for the second, a federal claim is "inextricably intertwined" with a prior state court decision if "granting the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling." FOCUS v. Allegheny County Court of Common Pleas., 75 F.3d 834, 839-40 (3d Cir. 1996).

Rooker-Feldman thus operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. See also B.S. v. Somerset County, 704 F.3d 250 (3d Cir. 2013). To put it another way, Rooker-Feldman bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus., Inc., 544 U.S. 280, 284 (2005).

A final judgment of foreclosure was entered in New Jersey Superior Court on July 31, 2017. That state court judgment preceded the filing of this action on October 6, 2017.[2]

---

[2]    Even if steps such as a sheriff's sale remain to be taken, a state court foreclosure judgment is final for purposes of New Jersey law and Rooker-Feldman:

    That the foreclosure judgment had been entered is sufficient to invoke Rooker–Feldman. Under New Jersey law, a mortgage foreclosure suit determines the right to foreclose and the amount due on the mortgage. Sheerer v. Lippman & Lowy, 125 N.J.Eq. 93, 4 A.2d 273 (E. & A.1939); Central Penn Nat'l Bank v. Stonebridge, Ltd., 185 N.J.Super. 289, 302, 448 A.2d 498 (Ch.Div.1982). See generally 30A N.J. Prac. Law of Mortgages § 31.25. The foreclosure judgment also entitles the mortgagee to recover, by way of Sheriff's sale, the amount due from the land subject to the mortgage. See N.J.S.A. 2A:50–36; First Union Nat'l Bank v. Penn Salem Marina, Inc., 383 N.J.Super. 562, 570, 893 A.2d 1 (App.Div.2006) rev'd on other grounds by 190 N.J. 342, 921 A.2d 417 (2007). Indeed, the terms of a mortgage foreclosure judgment will include "an order to sell so much of the mortgaged premises as will be sufficient to satisfy the

The question now is whether the claims in this federal court action are "inextricably intertwined" with that state foreclosure proceeding. The state foreclosure action and judgment necessarily involved the following essential elements: the validity of the note and mortgage; the alleged default; and the plaintiff's right to foreclose (which would include plaintiff's standing by assignment or otherwise). *See Great Falls Bank v. Pardo,* 263 N.J. Super. 388, 394, 622 A.2d 1353, 1356 (Ch. Div. 1993). "If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." *FOCUS,* 75 F.3d at 840. As to federal actions following mortgage foreclosures, the case law gives some guidance.

*In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009), for example, considered a post-foreclosure federal claim for rescission of the mortgage. A finding that no valid mortgage existed, the Court held, would eliminate the basis for the prior foreclosure judgment. Such a claim is an easy case for application of *Rooker-Feldman*. A federal claim that the state foreclosure court entered its judgment in the absence of personal jurisdiction is likewise barred by *Rooker-Feldman*. Because such a plaintiff "can only prevail if a federal court concludes that the state courts' default judgments were improperly obtained," his claim is inextricably intertwined with the state proceedings. *In re Knapper,* 407 F.3d 573, 581 (3d Cir. 2005). *See also Ayres-Fountain v. E. Sav. Bank,* 153 F. App'x 91, 92 (3d Cir. 2005) (barring post-foreclosure federal claim for rescission of mortgage and damages); *Moncrief v. Chase Manhattan Mortgage Corp.,* 275 F. App'x 149, 153 (3d Cir. 2008) (barring a claim for "redress" of state court judgment in a foreclosure action).

---

mortgage and subordinate liens ... and that an execution issue ... commanding the [sheriff] to make sale...." 30A N.J. Prac. Law of Mortgages § 31.25.

*Patetta v. Wells Fargo Bank, NA,* Civ. No. 09-2848, 2010 WL 1931256, at *7 (D.N.J. May 13, 2010) (Wolfson, J.).

Under these precedents, Barrett's causes of action are barred. (*See* list of counts, p. 2, *supra*.) They share a central feature: all seek a declaration, or rely on the premise, that the mortgage and foreclosure judgment were invalid. They implicate the validity of the mortgage, the procedures leading to the foreclosure, and the foreclosure proceeding itself. They require a finding that Chase was not the true holder of the secured interest in question, and was not entitled to pursue the foreclosure. In short, this complaint is fatally intertwined with the forfeiture judgment. It is dismissed for lack of jurisdiction.

### B. Rule 12(b)(6) motion

On the chance that some claims may pass the jurisdictional bar, I briefly consider *res judicata* as alternative grounds for dismissal.

Claims that survive scrutiny under *Rooker-Feldman* may nevertheless be barred by doctrines of *res judicata*.[3] *See Ayres-Fountain*, 153 F. App'x at 93 ("even if review of the complaint were not barred by *Rooker–Feldman*, we agree with the District Court that Ayres–Fountain's claims were barred by res judicata"). I find that to be the case here. Although *res judicata* is an affirmative

---

[3]    Where the federal plaintiff presents "some independent claim," *i.e.,* one that does not implicate the validity of the state court judgment, the doctrine does not apply. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) quoted in *Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 547–48 (3d Cir. 2006)). In such an instance, jurisdiction is confirmed and the court should then consider "whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 292.

This Circuit has adopted that stepwise approach. *Madera,* for example, after applying *Rooker-Feldman* to bar a claim for rescission, then considered a cause of action for damages based on the title insurer's alleged failure to disclose the correct title insurance charge, in violation of the Truth in Lending Act ("TILA"). As to that claim, *Madera* did not apply *Rooker-Feldman,* but proceeded to the merits of the bankruptcy court's grant of summary judgment. 586 F.3d at 232. In *Easley v. New Century Mortgage Corp.*, 394 F. App'x 946 (3d Cir. 2010), the Court upheld the application of *Rooker-Feldman* to claims that, if granted, would imply that the foreclosure judgment was invalid. Other claims, however, were not decided by the state court and were based on "allegations of fraud, deception and other wrongs which pre-dated the foreclosure action," as to which plaintiff sought consequential damages. *Id.* at 948. These were not so clearly intertwined with the foreclosure judgment as to be barred by *Rooker-Feldman*. (*Easley* held, however, that the claims not barred by *Rooker-Feldman* were barred by *res judicata*.)

defense, it may be considered on a motion to dismiss if its applicability can be determined from the face of the complaint and documents properly considered on a Rule 12(b)(6) motion.  If there were jurisdiction, the New Jersey doctrines of claim preclusion and the entire controversy rule would furnish alternative grounds for dismissal.

### 1.  New Jersey doctrine of claim preclusion and the entire controversy rule

Whether a state court judgment should have a preclusive effect in a subsequent federal action depends on the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir.1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). *See also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). Here, that State is New Jersey.

New Jersey claim preclusion law, like federal law, has three essential elements: (1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same transaction or occurrence. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412, 591 A.2d 592, 599 (1991) (state law); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) (federal law). If those three requirements are met, then the doctrine bars "the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen*, 449 U.S. at 94, 101 S. Ct. at 414; *Watkins*, 124 N.J. at 412, 591 A.2d at 599 ("Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined.")

Claim preclusion in the traditional sense tends to be subsumed by New Jersey's "entire controversy" rule. The entire controversy rule emphasizes, not just claims within the scope of the prior judgment, but all *claims and parties* that a party *could have joined* in a prior case based on the same transaction or

10

occurrence. The entire controversy doctrine thus "requires a party to bring in one action 'all affirmative claims that [it] might have against another party, including counterclaims and cross-claims,' and to join in that action 'all parties with a material interest in the controversy,' or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 662 A.2d 509, 513 (1995)).

> We have described the entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). A mainstay of New Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court[.]" *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1172 (N.J. 1989); *see also* N.J. Const. art. VI, § 3, ¶ 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); *Smith v. Red Top Taxicab Corp.*, 168 A. 796, 797 (N.J. 1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon.")....

*Ricketti v. Barry,* 775 F.3d 611, 613 (3d Cir. 2014).

Like traditional res judicata, the state entire controversy doctrine applies in federal court "when there was a previous state-court action involving the same transaction." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). It extinguishes any subsequent federal-court claim that could have been joined, but was not raised in the prior state action:

> Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action. The doctrine has three purposes: (1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay. *See DiTrolio v. Antiles,* 142 N.J. 253, 662 A.2d 494, 502 (N.J.1995). As an equitable doctrine, its application is flexible, with a case-by-case appreciation for fairness to the parties.

*Paramount Aviation Corp. v. Agusta,* 178 F.3d 132, 137 (3d Cir. 1999).

The preclusive effect of the rule is explicit: "Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine...." N.J. Ct. R. 4:30A. But the rule applies only to claims that could have been permissibly joined in the prior proceeding. And the entire controversy rule itself notes the limitations on claims in a foreclosure proceeding: "... except as otherwise provided by R. 4:64-5 (foreclosure actions) ...." *Id.*

The upshot is that only claims germane to the prior mortgage foreclosure will be precluded in a later action. The cited rule, N.J. Ct. R. 4:64-5, limits permissible claims in mortgage foreclosure actions to those which are "germane" to the foreclosure.[4] For both traditional claim preclusion and the entire controversy rule, then, it is critical to determine what claims or defenses could permissibly have been asserted in the prior proceeding. If claims were not "germane" to the foreclosure, then they could not have been brought in that action. And if the litigant had no opportunity to present them in the prior action, then they cannot be precluded by the prior judgment.

---

[4]   **4:64-5. Joinder of Claims in Foreclosure**
     Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees. A defendant who chooses to contest the validity, priority or amount of any alleged prior encumbrance shall do so by filing a cross-claim against that encumbrancer, if a co-defendant, and the issues raised by the cross-claim shall be determined upon application for surplus money pursuant to R. 4:64-3, unless the court otherwise directs.

     Claims that could not have been brought in the first proceeding also include those that were "unknown, unarisen, or unaccrued" at the time. *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 N.J. 310, 662 A.2d 523, 530 (1995) (citations omitted). Those exceptions are not implicated here.

     The entire controversy rule applies to parties, as well as claims, that were not joined in the prior action. That aspect of the rule, too, is not relevant here. *See Ricketti, supra* (requiring particular safeguards as to absent parties).

As to what claims are "germane," the seminal case is *Leisure Technology–Northeast v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 349 A.2d 96 (App. Div. 1975). "The use of the word 'germane' in the language of the rule," said the Appellate Division, "undoubtedly was intended to limit counterclaims in foreclosure actions to claims *arising out of the mortgage transaction* which is the subject matter of the foreclosure action." 349 A.2d at 98–99 (emphasis added). There, the foreclosure defendant/borrower had pled an affirmative defense and counterclaim. The Appellate Division held that "the thrust of the counterclaim is the assertion that plaintiff had breached the underlying agreement in relation to which the mortgage was executed and interfered with defendants' rights under that agreement. In the usually understood sense of the word, these claims were germane to the foreclosure action." 349 A.2d at 99.

Post-*Leisure Technology,* the germaneness rule has solidified thus:

> Indeed, the Appellate Division has been "clear that any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure." *Sun NLF Ltd. Partnership v. Sasso*, 313 N.J. Super. 546, 713 A.2d 538, 540 (N.J. Super. Ct. App. Div.1998).

*Zebrowski v. Wells Fargo Bank, N.A.*, No. CIV.1:07CV05236JHR, 2010 WL 2595237, at *6 (D.N.J. June 21, 2010) (Rodriguez, J.); *see also Joan Ryno, Inc. v. First Nat. Bank of S. Jersey*, 208 N.J. Super. 562, 570, 506 A.2d 762, 766 (App. Div. 1986).

A Third Circuit case persuasively penned by Judge Fuentes (himself a product of the New Jersey bench and bar) illustrates the "germaneness" issue as it bears on the entire controversy doctrine. In *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortgage Corp.*, 446 F. App'x 469 (3d Cir. 2011), a foreclosure action went to final judgment. After bankruptcy-related delays that staved off a sheriff's sale, the borrower/owner paid a reinstatement fee and obtained a dismissal of the foreclosure. The borrower then brought a putative class action in federal court, claiming that the lender had charged excessive

fees in connection with reinstatement.[5] The district court, applying the entire controversy doctrine, dismissed the case on a Rule 12(b)(6) motion. The Third Circuit affirmed.

Judge Fuentes found that the borrower's claims could have been brought in the foreclosure under New Jersey practice:

> Claims are considered to be germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action. *Leisure Technology–Northeast, Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 349 A.2d 96, 98 (1975). Here, Coleman's claims arose directly out of a reinstatement quote that was provided to her as an alternative to a foreclosure sale, and the excessive fees allegedly charged by Chase would not have been charged but for the foreclosure action. Accordingly, Coleman's causes of action arose out of and were germane to the original foreclosure action.

446 F. App'x at 472. Because the claims would have been "germane" in the sense that they arose from the relevant mortgage transaction, they were now barred by the entire controversy doctrine. *See also Dennis v. MERS/Merscorp Mortgage Elec. Registration Sys., Inc.,* No. CIV.A. 11-4821 JLL, 2011 WL 4905711, at *1 (D.N.J. Oct. 13, 2011) (barring claims by plaintiff who had defaulted in state foreclosure action that "as a result of defective assignments of her mortgage, all claims to the property are void").[6]

### 2. Application of entire controversy and claim preclusion to this case

The entire controversy rule applies here. The state court mortgage foreclosure was "a previous state-court action involving the same transaction,"

---

[5]    The federal court causes of action asserted in *Coleman* included (1) breach of contract; (2) intentional misrepresentation; (3) negligence; (4) breach of duty of good faith and fair dealing; (5) unjust enrichment; (6) unfair and deceptive assessment and collection of fees; (7) violation of the Fair Foreclosure Act ("FFA"); (8) excessive fees in violation of New Jersey Court Rule R 4:42–9(a)(4); (9) excessive taxed costs in violation of various state statutes; (10) violation of New Jersey's Consumer Fraud Act ("CFA"); (11) forfeiture of interest; and (12) violation of the Truth–In Consumer Contract, Warranty and Notice Act.

[6]    A case reaching the opposite result is *In re Mullarkey*, 536 F.3d 215, 229-30 (3d Cir. 2008). There, however, the court determined that the plaintiff's federal cause of action truly arose, not from the foreclosure, but from alleged misrepresentations in related bankruptcy proceedings.

14

*i.e.,* the mortgage, the default, and the foreclosure itself. *Bennun,* 941 F.2d at 163 (3d Cir. 1991). The subject matter of that prior action necessarily embraced the claims and parties in this federal action. The parties were the same or in privity. Thus, Count 1 claims that the mortgagee did not properly possess standing to foreclose. Count 2 claims that the mortgage was not valid because WaMu concealed the fact that it was not a federal reserve depository bank. Count 3 alleges fraud, again with the object of demonstrating that WaMu did not possess the kind of secured interest that would permit it to foreclose. Count 4 alleges unconscionable conduct in connection with the origination of the mortgage. Counts 5 and 6 allege breach of contract and breach of fiduciary duty, again with the object of demonstrating that WaMu did not have the kind of secured interest that would permit it to foreclose. Count 7 seeks to "quiet title," and Counts 8 and 9 seek injunctive and declaratory relief, based on the same allegations. Barrett points to no reason why she could not have joined all of her federal-court claims and parties in the state action.

In the alternative, the three prerequisites to claim preclusion apply here.

(1) There was a final judgment on the merits. A final judgment of foreclosure was entered in New Jersey Superior Court on July 31, 2017, in the amount of $ 102,526.48, and a sheriff's sale was ordered.

(2) The prior suit involved the same parties or their privies.

(3) The subsequent suit (*i.e.,* this one) is based on the same transaction or occurrence. It grows out, and is based on, the mortgage and the mortgage foreclosure. *Watkins,* 124 N.J. at 412, 591 A.2d at 599.

It follows, then, that claim preclusion and the entire controversy doctrine extinguish any subsequent federal-court claim that either was decided, or else could have been joined but was not raised in the prior foreclosure action. As to any claims that survive *Rooker-Feldman,* the 12(b)(6) motion to dismiss on grounds of *res judicata* and the entire controversy rule is granted.[7]

## CONCLUSION

Defendant Wells Fargo's motion to dismiss the complaint (ECF no. 19) is GRANTED. The remaining defendants' motion to dismiss the complaint (ECF no. 20) pursuant to Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction under the *Rooker-Feldman* doctrine is GRANTED. To the extent that this court might have jurisdiction of any claims or parts of claims, they are nevertheless dismissed pursuant to Fed. R. Civ. P. 12(b)(6) on grounds of res judicata and the entire controversy rule.

Dated: July 16, 2018

KEVIN MCNULTY
United States District Judge

---

[7]     Defendants' motions cite additional grounds, many of which appear to have merit. These include the Anti-Injunction Act, 28 U.S.C. § 2283; failure to exhaust administrative remedies as to claims arising from the origination of the loan by a bank taken over by FDIC as receiver, see 12 U.S.C. §1821(d) (FIRREA); the statute of limitations; and general failure to state a claim under the pleading standards of Fed. R. Civ. P. 8. I do not reach them.